IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00296-MR

| | |
|---|---|
| KAYIE SHAUNE D. WRIGHT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>THOMAS A. HAMILTON, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 28] and Plaintiff's Motion for Summary Judgment [Doc. 33].

**I.     PROCEDURAL BACKGROUND**

The Plaintiff Kayie Shaune D. Wright, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his Eight Amendment rights while incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina, based on the use of excessive force by Defendant Thomas Hamilton, the Unit Manager of E-Unit at Marion. [Doc. 1]. Plaintiff alleges that, on June 5, 2019, Defendant Hamilton sprayed him with pepper

spray without reason. [Id. at 3]. Plaintiff does not state whether he purports to sue Defendant in his individual or official capacity or both. [See Doc. 1].

The Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff proceeded with his claim. [Doc. 9]. On September 23, 2021, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 28]. Defendant argues he is entitled to summary judgment because sovereign immunity bars any official capacity claim, because he did not use excessive force on Plaintiff, and because Defendant is shielded from liability by qualified immunity. [Doc. 29]. In support of his summary judgment motion, Defendant submitted a memorandum, his own Declaration, Plaintiff's North Carolina Department of Public Safety (NCDPS) Offender Information Sheet, a summary of Plaintiff's infraction history, Incident and Disciplinary Reports, and video footage of the incident.[1] [Doc. 29, 29-1 to 29-6; see Docs. 30, 31, 35].

The next day, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of

---

[1] Defendant manually filed the video footage pursuant to the Court's Order at Docket No. 35. [See also Docs. 30, 31]. The Court will hereinafter reference this footage as "Doc. 35."

the manner in which evidence could be submitted to the Court. [Doc. 32]. Plaintiff responded to Defendant's motion.[2] He submitted his own Declaration; Defendant's Declaration; Defendant's Response to Plaintiff's discovery requests, including Disciplinary and Incident Reports and many related witness statements, NCDPS and Marion Use of Force Policies; and hundreds of pages of Plaintiff's medical records.[3]

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2] Plaintiff's response purported to be both his own motion for summary judgment and a response to Defendant's motion. [See Doc. 33]. Plaintiff, however, sought no extension of the then expired dispositive motions' deadline when filing his motion and the Court, therefore, will summarily deny it. Moreover, even if timely filed, it would be denied on the merits.

[3] The discovery documents submitted by Plaintiff consist of 1,125 pages, most of which are Plaintiff's seemingly irrelevant medical records. Plaintiff makes no specific reference to any of these documents and, while the Court has generally reviewed them, it will not scour them for genuine issues of fact where Plaintiff has provided the Court with no direction. [See Doc. 33-7].

3

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

4

248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

### III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.

Since 2012, Plaintiff has been incarcerated on a conviction for second degree murder. [Doc. 29-2 at 1]. Since then, Plaintiff has been charged with at least 155 infractions while in prison, including 42 charges of disobeying an

order, eight charges of assaulting staff with a weapon, seven charges of "assaulting staff/throwing liquid," and two charges of threatening staff. [Doc. 29-3]. At least some of these infractions for assaulting staff by "throwing liquids" appear to relate to Plaintiff's proclivity for spitting on correctional staff. [See Doc. 29-4 at ¶ 9: Hamilton Dec.]. Defendant Hamilton is and was at the relevant times an Assistant Unit Manager at Marion. [Id. at ¶ 2].

The use of force by correctional staff at Marion is governed by the NCDPS and Marion Use of Force Policies (collectively, "Use of Force Policy" or "Policy"). [See Doc. 33-7 at 26-58]. The Policy provides that, "[t]he use of force shall be permissible only to the extent reasonably necessary to meet or accomplish a proper correctional objective." [Id. at 27, 43]. Thus, "reasonable force is authorized in order to prevent an escape or to ensure compliance with a lawful order or to protect property…." [Id. at 27, 43-44]. "An officer should attempt non-forcible methods of offender control, but only to the extent reasonably possible under the circumstances as they appear to that officer." [Id. at 27, 44]. However, an officer "shall not use force against an offender who has abandoned his resistance or who is effectively restrained." [Id. at 28, 44].

On June 5, 2019, at approximately 7:39 a.m., Officer John Amburgey and Sergeant Christopher Curtis went to Plaintiff's cell to place him in full

6

restraints to see a Disciplinary Hearing Officer (DHO). [Id. at 964]. Plaintiff was secured in restraints behind his back through his cell's trap door. Plaintiff then stepped back away from his cell door and it was opened. Officer Amburgey took a couple steps inside the cell and Plaintiff kicked Amburgey in the throat, knocking him backwards and causing his glasses to fall off and to the ground, damaging them. [Id. at 964, 973-74]. Officer Amburgey quickly composed himself and he and Sergeant Curtis secured Plaintiff against his bunk. [Id. at 964]. Officer Amburgey wrapped his arms around Plaintiff's upper arms and torso and used his body weight to hold Plaintiff. Sergeant Curtis put his left hand on Plaintiff's chest and used his right hand to control Plaintiff's left arm. Once Plaintiff was secured, Officer Amburgey and Sergeant Curtis turned Plaintiff to his stomach to prevent him from spitting on and otherwise further assaulting them. [Id. at 964, 973, 974]. Officer Colton Bridges responded to a call for assistance and assisted in placing Plaintiff in full restraints, which included a leg chain. [Id. at 964, 975; Doc. 35]. At approximately 7:43 a.m., Plaintiff was moved to the Upper E-Unit A-wing shower. [Id. at 964; see Doc. 29-4 at ¶ 7, Doc. 33-7 at 975, Doc. 35]. Plaintiff's in-cell property was removed and inventoried because of Plaintiff's assaultive behavior. [Id. at 976, 979]. During the property removal, Officers found two broken food trays from the kitchen. [Id.].

At approximately 8:54 a.m., Defendant Hamilton, along with Officer Bridges and Sergeant John Stiles, escorted Plaintiff, who was in full restraints, from the Upper E-Unit A Wing shower to a small cell with video surveillance for observation. [Doc. 29-4 at ¶ 7; Doc. 33-4 at 10; Doc. 33-7 at 964, 980; Doc. 35]. Plaintiff, who was escorted by two officers, and Defendant Hamilton entered the cell. A fourth, otherwise unidentified, officer appeared at the cell's doorway during the video but never fully enters the cell. [Doc. 35]. Once in the cell, Defendant Hamilton ordered Plaintiff to face the wall with the bunk running along it. [Doc. 29-4 at ¶ 9]. Given Plaintiff's history of spitting on and assaulting staff, Defendant Hamilton told Plaintiff that if he turned toward staff, Defendant would use pepper spray on Plaintiff. [Id. at ¶¶ 9-10]. One officer left the cell, leaving the second officer and Defendant Hamilton in the cell, each holding one of Plaintiff's arms. [Doc. 35]. Next, the second officer moved to leave the cell and Defendant Hamilton shifted to hold Plaintiff's left arm with his right hand. [Doc. 35; see Doc. 33-2 at ¶ 4]. Plaintiff, still restrained, was told that he would remain in that cell for observation. [Doc. 33-2 at ¶ 5]. Plaintiff attests that he, therefore, "continued to be calm." [Id.]. Finally, as the second officer and Defendant Hamilton started to back out of the cell, Plaintiff turned toward them and away from the wall. [Doc. 29-4 at ¶ 11; Doc. 35]. At this point, the video shows a

8

Case 1:20-cv-00296-MR   Document 37   Filed 02/14/22   Page 8 of 16

front view of the Plaintiff and only the back of Defendant's head. Defendant then gave Plaintiff several direct orders to face the bunk. Plaintiff, however, refused to comply. [Id.]. Approximately four seconds after Plaintiff turned toward Defendant Hamilton and after Plaintiff's refusal to comply with his orders, Defendant Hamilton administered a three-second burst of pepper spray to Plaintiff's facial area, pursuant to Use of Force Policy, to gain Plaintiff's compliance and to prevent further assault on correctional staff.[4] [Doc. 29-4 at ¶ 12; see Doc. 33-7 at 29]. Defendant Hamilton then regained an escorting grip on Plaintiff and quickly removed him from the cell. [Doc. 29-4 at ¶ 12; Doc. 35]. Two other officers immediately escorted Plaintiff to the shower for decontamination. [Id. at ¶ 13].

Pursuant to policy, the use of force was reported, and an investigation was undertaken. [Id. at ¶ 14]. Defendant, Plaintiff, and several other prison officials prepared witness statements related both to the use of force incident and to Plaintiff's assault on Officer Amburgey earlier that morning. [Id.; Doc. 33-7 at 973-97]. The investigation concluded that the force used was justified and necessary to maintain control of Plaintiff and to gain compliance.

---

[4] Plaintiff attests as follows relative to these events: "In my mind there's no way he's going to leave out this cell (in which all staff were outside of the cell) and tell me to stand still while my hands behind my back. So just off of me not reacting how he (Thomas Hamilton) wanted he pulled his mace can out and sprayed me, just to appear superior in employees present due to the allegations of disrupted behavior prior. He asked 'what are you looking at!' no orders!" [Doc. 33-2 at ¶ 5 (errors uncorrected)].

9

[Doc. 29-4 at ¶ 14]. Defendant Hamilton was, therefore, not disciplined as a result of the incident. [Id. at ¶ 15]. Plaintiff, on the other hand, was found guilty of disobeying orders. [Id. at ¶ 16; Doc. 29-5 at 3-4]. Plaintiff was also found guilty of several other infractions for his conduct earlier that day. [Doc. 29-3 at 2].

## IV. DISCUSSION

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims

brought under 42 U.S.C. § 1983.  See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina).  As such, Defendant is entitled to summary judgment to the extent Plaintiff sought to name Defendant Hamilton in his official capacity.

## B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim.  This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances."  Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard."  Id. (citing

Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security." Id. (quoting Brooks, 924 F.3d at 112).

The use of mace, tear gas, or other chemical agents "'in quantities greater than necessary or for the sole purpose of inflicting pain'" is generally recognized as a constitutional violation. Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams, 77 F.3d at 763). Pepper spray, however, is not "per se a cruel and unusual punishment," McCargo v. Mister, 462 F.Supp. 813, 818 (D. Md. 1978), and can be used to "control a recalcitrant inmate" without violating the Eighth Amendment. Williams, 77 F.3d at 763. An Eighth Amendment violation may be found when a chemical agent is used

12

without prior verbal command or after a prisoner has been subdued or becomes compliant with an officer's instructions. Pevia v. Shearin, No. ELH-13-2912, 2015 WL 629001, at *10 (D.Md. Feb. 10, 2015) (collecting cases).

Here, Plaintiff contends that Defendant Hamilton violated Plaintiff's rights under the Eighth Amendment by pepper spraying Plaintiff while he was restrained. Plaintiff attests that he simply (and subjectively) did not believe that Defendant Hamilton would actually use pepper spray on Plaintiff if he turned around, contrary to Defendant Hamilton's order, because Plaintiff was restrained, and the officers were already outside of the cell. [See Doc. 33-2 at ¶ 5]. Then, Plaintiff vaguely states, "no orders!" without any further explanation. [Doc. 33-2 at ¶ 5]. Plaintiff's evidence is insufficient to create a genuine issue for trial.

The uncontroverted forecast of evidence shows that Plaintiff had violently assaulted another correctional officer while Plaintiff while his arms were restrained behind his back just over an hour earlier that morning; that Plaintiff had a long and documented history of assaulting staff, particularly by spitting on staff; and that Defendant Hamilton warned Plaintiff that he would use pepper spray if Plaintiff turned toward him. The video shows that, contrary to Plaintiff's claim, Defendant Hamilton and a second officer remained in the cell when Plaintiff turned around; and that even after Plaintiff

turned toward Defendant Hamilton, Hamilton repeated the order to turn back toward the bunk several times before using a short, three-second burst of pepper spray on Plaintiff.

Correctional officers do not violate an inmate's Eighth Amendment rights by using pepper spray to preserve internal order by ensuring compliance with lawful orders. See Shiheed, 802 Fed. App'x at 767. The forecast of evidence plainly shows that Defendant Hamilton employed pepper spray because of Plaintiff's extensive assaultive history, including a serious assault that morning, and refusal to follow Defendant's commands to turn back toward the bunk so that he and another officer might safely leave the cell. Correctional officers do not have to sit back and wait to be assaulted by prisoners before using force. Shiheed, 802 Fed. App'x at 767. They may, as Defendant Hamilton did here, also use force to gain compliance with lawful orders and to preserve order, especially in an readily dynamic situation involving a prisoner with Plaintiff's history.

As such, the Court finds that no reasonable jury, based on the forecast of evidence here, could find that the use of force on Plaintiff violated his rights under the Eighth Amendment. See Matsushita Elec. Industrial Co., 475 U.S. at 586-87, 106 S.Ct. at 1356.

14

Case 1:20-cv-00296-MR    Document 37    Filed 02/14/22    Page 14 of 16

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendant violated a constitutional right, Defendant is entitled to qualified immunity on Plaintiff's individual capacity claim. As such, summary judgment for Defendant would also be proper on this ground. Moreover, even if there were some ambiguity as to what Defendant said (as the video

15

clearly shows Defendant speaking the command), based on the totality of the circumstances facing Defendant he has qualified immunity from any liability that may otherwise arise from this split-second decision to self-protect.

The Court, therefore, will grant Defendant's motion for summary judgment and dismiss this matter with prejudice.

## VII. CONCLUSION

For all the foregoing reasons, Defendant Hamilton's motion for summary judgment will be granted.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that Defendant Hamilton's Motion for Summary Judgment [Doc. 28] is **GRANTED** and Plaintiff's Motion for Summary Judgment [Doc. 33] is **DENIED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: February 14, 2022

Martin Reidinger
Chief United States District Judge